(C. D. 1907)

MORRIS FRIEDMAN *v.* UNITED STATES

United States Customs Court, Second Division

(Decided August 19, 1957)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff. *George Cochran Doub*, Assistant Attorney General (*Henry J. O'Neill* and *Alfred A Taylor, Jr.*, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: This case presents for our determination the proper dutiable classification of certain imported merchandise described in the record as "Timetable movements for lock" or as "time lock movements."

The collector of customs classified the merchandise in paragraph 368 (a) of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 368 (a)), which provides for any mechanism, device, or instrument intended or suitable for recording, indicating, or performing any operation or function at a predetermined time or times, valued at over $10 each and containing 11 jewels, and imposed duty thereon at the rate of 65 per centum ad valorem, plus $4.50 each, plus 25 cents for each jewel, amounting in all to $7.25 each.

The importer claims that the merchandise should be classified in paragraph 367 of said act (19 U. S. C. § 1001, par. 367), as modified by the trade agreement with Switzerland, 69 Treas. Dec. 74, T. D. 48093, as timekeeping or time-measuring devices, instruments, or mechanisms, whether or not designed to be carried or worn on or about the person, measuring 1.47 inches in width when measured at

the shortest surface dimension through the center of the pillar or bottom plate (par. 367 (b)), containing 11 jewels and constructed to operate for a period in excess of 47 hours without rewinding when fully wound, and subjected to duty at the rate of 90 cents each (par. 367 (a) (1)), plus 9 cents for each jewel in excess of 7 (par. 367 (a) (3)), plus 50 cents for length of operation without rewinding (par. 367 (a) (5)), amounting to $1.76 each.

At the trial, the following exhibits were introduced by plaintiff and received in evidence:

Exhibit 1—Mechanism representing the imported item.

Exhibit 3—A time lock mechanism.

Exhibit 4—A tongue piece assembly.

(Exhibit 2 was merely marked for identification, being described in defendant's brief as a "key which is not a part of the importation, but which is necessary for use in winding Exhibit 1.")

Counsel for the parties litigant stipulated and agreed:

(1) That the device or mechanism under protest when measured at the shortest surface dimension through the center of the top and/or bottom plate is 1.47 inches in width.

(2) That said device or mechanism contains 11 jewels as defined in paragraph 367 (i); that it is marked "unadjusted"; and that it is constructed to operate for a period in excess of 47 hours without rewinding when fully wound.

The record further discloses that the imported commodity is generally installed in bank vaults and bank safes as a time lock mechanism.

There being no dispute between the parties as to the material facts of the case, the problem confronting us is which of the two statutes above referred to is the more specific in its description of the merchandise.

It will give a clearer perspective of the issue before us if, for purposes of analysis and comparison, we quote the basic provisions of the competing statutes, certain portions being italicized:

PAR. 367. (a) Watch movements, and *time-keeping, time-measuring, or time-indicating mechanisms, devices, and instruments,* whether or not designed to be worn or carried on or about the person, * * *.

PAR. 368. (a) Clocks, clock movements * * *, *time-keeping, time-measuring, or time-indicating mechanisms, devices, and instruments,* * * *, *and any mechanism, device, or instrument intended or suitable* for measuring time, * * *, or for recording or indicating time, or *for recording, indicating, or performing any operation or function at a predetermined time or times,* * * * (except the articles enumerated or described in paragraph 367), * * *.

It will be observed from the above-quoted language that both provisions enumerate "time-keeping," "time-measuring," and "time-indicating" devices, among other things, which it is important to bear in mind in view of the excepting clause in paragraph 368 (a).

A significant consideration to be drawn from a comparison of the foregoing paragraphs is that paragraph 368 contains a provision for

devices designed or suitable for performing any operation or function at a predetermined time, which is not found in paragraph 367. This suggests that Congress was using in paragraph 368 an expression clearly intended to embrace something different from "time-keeping, time-measuring, or time-indicating" devices, each of which has its appropriate operation in its respective paragraph.

The record evidence presents no material conflict with respect to the nature, construction, and use of the imported commodity. As stated by plaintiff in his brief: "The record shows, and there seems to be no dispute, that this imported mechanism is ordinarily used in connection with a time lock such as Exhibit 3 on the door of a vault or safe, although its use is not dedicated to this sole purpose; it can also be used, and is used, in connection with other devices such as burglar alarms."

To summarize briefly some of the evidence outlining the structure and utility of the subject merchandise, reference is made to the evidence given by plaintiff's witness Herbert R. Lee, presently foreman of the Time Lock Division of the Yale and Towne Manufacturing Co., with which company he had been employed as a time lock specialist for the past 26 years. In the performance of his duties as foreman, he supervised the manufacture and final assembly and inspection of the time locks manufactured by his concern. In addition to these duties, he supervised all the repair work on timekeeping mechanisms which are sent to his company for repair. The Yale and Towne Co. is engaged in manufacturing a variety of locks and hardware, also pumps and door closers.

Lee testified that he had installed merchandise such as exhibit 1 as part of the time lock mechanism used in connection with bank vaults and bank safes. Exhibit 3, which represents a time lock mechanism, contains three devices like exhibit 1. When each is in a fully rundown condition, the lock would be considered open. To make use of the time lock, the operator inserts a key having a square hole which fits over a square winding arbor on exhibit 1. By means of this key, each movement is wound for the desired length of time the safe is to be locked. For instance, if it should be desired to have the safe closed for a period of 16 hours, each movement would be wound until the 16-hour graduation coincides with a small pointer on the movement. Each movement will then run until the opening point is reached, which is marked by the figure "0" on the dial.

Exhibit 4, which is referred to as a "tongue piece assembly," is attached to the moving parts of a vault door or safe door, to which exhibit 3 is also attached. When exhibit 3, the time lock mechanism, is in the open position, exhibit 4 will enter the opening in exhibit 3 to the full extent.

Any one of the three devices in exhibit 3, each one of which is like exhibit 1, will function independently from any of the others. It was

explained that the reason exhibit 3 contains three devices such as exhibit 1 is that it has always been the policy of time lock manufacturers not to use a single timing device. For security and safety, if one timing device fails to function, there are two others still left to operate, and if perchance two of the timing devices should fail, the remaining one will carry on and execute its purpose.

When the timing devices have run their allotted period, a steel pin attached to the dial on exhibit 1 contacts a lug which is found on the underside of the bar partially covering the dial of the three devices in exhibit 3. Eight hours before a time lock is considered open, the steel pin on the dial of exhibit 1 contacts the lug on the underside of this bar on exhibit 3 and starts to move it in a slow manner to the opening point, exactly 8 hours being required to move the bar so that the time lock may reach the open position.

Plaintiff contends that regardless of the ultimate use to which the time lock mechanism is put, it is, nevertheless, designed to keep accurate time during the period for which it is set and "is designed to measure in advance the passage of time." In other words, whether the dial is set for 8 hours or 12 hours or any other period, it will accurately measure the time for each period.

In support of its contention that merchandise such as exhibit 1 is a timekeeping, time-measuring, or time-indicating device, plaintiff cites the following lexicographic definitions:

*Webster's New International Dictionary*

"*Timekeeper*, N. One who or that which keeps, marks, measures, regulates, or determines the time. *Specif.* A. A timepiece".

*Century Dictionary and Cyclopedia*

"*Timekeeper*, N. One who or that which marks, measures, or records time. (a) A clock, watch, or chronometer".

"*Time*, N. 20. * * * *To keep time* (a) To record time: as, the watch keeps good time".

*The Oxford Dictionary*

"*Time*. * * * 50. To keep time (b) Of a timepiece: To register the passage of time correctly".

It is our considered opinion that the definitions above quoted tend to defeat rather than to support plaintiff's contention.

We have pointed out earlier in this opinion that paragraphs 367 and 368, *supra*, both enumerate "time-keeping," "time-measuring," and "time-indicating" devices, but that paragraph 368, in addition to enumerating the three items above specified, also provides for devices suitable "for recording, indicating, or performing any operation or function at a predetermined time or times." The context of paragraph 368 clearly indicates that Congress regarded devices intended or suitable for performing any operation or function at a predetermined time or times as something other than or different

from clocks, clock movements, timekeeping, time-measuring, and time-indicating devices, and so forth.

If we were to accept as controlling the reasoning of plaintiff herein, it would, in substance, impute to Congress the enactment of a futile provision.

While it may be true in a sense that a time lock mechanism measures a period of time, that is a mere incident to the function for which it was designed and to which it was dedicated, namely, to maintain a safe in a locked position during a predetermined time. One would scarcely think of an article, such as exhibit 1, concealed in the structure of a safe as a timepiece or timekeeper within the meaning commonly ascribed to those words.

We find nothing in the various citations and authorities relied upon by plaintiff which militates against the conclusion we have reached herein.

From a consideration of the language of the competing provisions and the record before us, we are of the opinion that the language in paragraph 368 (a) is more specific than that of paragraph 367 (a) as applied to the articles here in issue for the simple reason that the former paragraph not only gives a word description of the commodity but, in addition, gives a specific use provision which is not contained in paragraph 367 (a). We hold, therefore, that the collector of customs correctly classified the time lock mechanisms in controversy within the purview of paragraph 368 (a), *supra*. All claims in the protest are overruled.

Judgment will be entered accordingly.